Hector **CORTEZ–ACOSTA**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 97–71033.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 2000

Filed Dec. 8, 2000

Rhoda Wilkinson–Domingo, San Francisco, California, for the petitioner.

Allen W. Hausman, Office of Immigration Litigation, Washington, DC, for the respondent.

Before: KOZINSKI, KLEINFELD, and McKEOWN, Circuit Judges.

PER CURIAM:

## I.  FACTS

Mr. Cortez–Acosta, a resident alien, was ordered in December 1994 to show cause why he should not be deported.  The reason stated in English and Spanish on his

notice was that he was "an alien who . . . knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law." This all grew out of an incident at the Tecate border station. Though the facts are not established by evidence in the record, it appears to be undisputed that Mr. Cortez–Acosta was a passenger in the first of two cars owned by the driver that were crossing the border together. The driver of the second car was a person who could not legally enter the United States. Everyone in the two cars was initially thought by the officers to be guilty of something, but Mr. Cortez–Acosta now maintains that he was merely an innocent bystander, a passenger, not responsible for what the driver of the car may have been doing in conjunction with the driver of the other car. No criminal charges were filed against Mr. Cortez–Acosta, but the INS thought the quantum of proof adequate to deport him.

Mr. Cortez–Acosta appeared before an Immigration Judge (IJ) for a "master" as opposed to an "individual" hearing in April 1996. At the time, immigration judges did not routinely record this type of proceeding, so there is no transcript. But the judge wrote in his own hand "Found Deportable 4–9–96" on the order to show cause, as a record of the proceeding. In addition, again in his own hand, the IJ wrote the word "admit" five times, in the left margin above each of the allegations stated in English and Spanish on the order to show cause, that: (1) "[y]ou are not a citizen or national of the United States"; (2) "[y]ou are a native of Mexico and a citizen of Mexico"; (3) "[y]ou entered the United States at or near Tecate, California on or about December 4, 1994"; (4) "[a]t that time you entered as a legal resident alien"; (5) "[o]n or about December 4, 1994, you knowingly encouraged, induced, assisted, abetted and aided Zeferino Hernandez–Gabriel, an alien, to enter the

United States at or near Tecate, California at a place, or in a manner, other than designated by immigration officials of the United States for the entrance of immigrants into the United States." Mr. Cortez–Acosta did not have a lawyer when he appeared at that hearing. The record is not clear on whether the IJ wrote "admit" contemporaneously or on a later date. In Mr. Cortez–Acosta's individual hearing on relief from deportation a few months later, described below, the IJ said that the order to show cause "has been corrected *nunc pro tunc* with marking today by me," and it is not clear whether these later markings include the word "admit" written above each of the five allegations.

Mr. Cortez–Acosta sought relief from deportation. The applicable statute makes relief available for aliens who temporarily proceeded abroad "who are returning to a lawful unrelinquished domicile of seven consecutive years."[1] An alien cannot obtain this relief, however, if he at any time assisted in alien smuggling of someone other than his parent, spouse, or child.[2] Mr. Cortez–Acosta had two problems in obtaining this relief. First, his application for it said he had lived in Mexicali, Mexico, for the last five years, not the United States, and only worked in the United States. Thus although he had permanent resident status, he was not actually living in the United States. Second, his alien smuggling case did not involve his parent, spouse, or child.

The same IJ held an individual hearing, this time transcribed, in September, on Mr. Cortez–Acosta's application for relief from deportation. The judge then recited that at the earlier hearing, Mr. Cortez–Acosta had admitted to alien smuggling, but his residence had been unclear, and the judge had scheduled a hearing on his application for relief from deportation. The judge then asked if it was correct that Mr. Cortez–Acosta had been working in

---

**1.** 8 U.S.C. § 1182(c).

**2.** 8 U.S.C. § 1182(a)(6)(E).

the United States and residing in Mexico, and Mr. Cortez–Acosta said that it was:

Q Now, the nature of the proceeding today is that on April 9 of this year you already told me that you did engage in alien smuggling, that you did aid and abet the illegal entry of Zefarino Hernandez Gabriel at or near Tecate, California on or about December 4, 1994. Based upon that and based upon the fact that you're a permanent resident, I didn't know about where you had been living or where you had resided. I gave you an opportunity to apply for relief from deportation under Section 212(c). Today's hearing is only about that application. You submitted the application to the Court. [And] pursuant to the application and pursuant to my asking you at pretrial about what the issues in the case are, you've indicated that you have been working in the United States but that your residence has been in Mexicali, Mexico. Is that correct, sir?

A Yes, sir.

At no point during the second hearing did Mr. Cortez–Acosta correct the judge's statement that he had admitted to alien smuggling at the prior hearing. The judge at one point asked him who was Zefarino Hernandez, the alien he was accused of smuggling, and Mr. Cortez–Acosta replied, "He was a friend of some cousins," without raising any question about whether he had helped smuggle him in. At another point, Mr. Cortez–Acosta did speak up to provide explanation. When the judge asked him if he wished to appeal denial of his request for relief from deportation, he said he wanted to answer. When the judge told him to go ahead, he explained that he was working in California, and had been living in Los Angeles with his siblings, but that he had been living in Mexicali, Mexico since 1990 be-cause he is married and wanted to make appropriate arrangements for his son.

The IJ found Mr. Cortez–Acosta to be forthright and deserving, but concluded that he could not under the statute grant relief. In the course of the extended colloquy with Mr. Cortez–Acosta, the IJ said that "there is no other chance for you to stay in this country because of the alien smuggling." The oral decision recites that Mr. Cortez–Acosta "had before entry as was determined by me on April 9, aided, abetted and encouraged or induced the illegal entry of an alien." The IJ recites that Mr. Cortez–Acosta "very candidly has indicated that after receiving his permanent resident status and entry document, being married he took up domicile in Mexicali, Mexico immediately across the border from Calexico, California and made daily entries to work for the last six years to Hopeville, California in agricultural packing." The IJ found that Mr. Cortez–Acosta was a "commuter" whose domicile in the United States had ended when he took up residence in Mexico in 1990, so he lacked the statutory requirement of an "unrelinquished domicile of seven consecutive years."[3] Because of the lack of seven years of domicile, the IJ denied relief. As to the alien smuggling, the IJ raised the question whether "as a reasonably deserving person" relief would have been granted had it not been for the lack of domicile, and said he could not "guarantee" it, but "he would have had obviously serious consideration." This entire proceeding was simultaneously translated between Spanish and English. Mr. Cortez–Acosta did not have an attorney.

Mr. Cortez–Acosta appealed to the BIA. He stated in his pro se notice that "there were not facts or evidence by INS that I knowingly encouraged, induced, assisted, abetted or aided, Zeferino Hernandez–Gabriel to enter the United States illegally. The allegations of the INS were based on *assumption only*, just because I happened to be a passenger in one of the vehicles

---

**3.** 8 U.S.C. § 1182(c).

that were detained. I was only a passenger hoping to reach Los Angeles to search for work." He felt intimidated into signing some documents in English. It is not clear what documents he was referring to. Mr. Cortez–Acosta did not state that he had any dispute with the IJ's decision on domicile.

The BIA affirmed, stating that Mr. Cortez–Acosta "is ineligible for any form of relief from deportation that is within the power of the Immigration Judge or this Board to grant." He now petitions this court for review.

## II. ANALYSIS

Mr. Cortez–Acosta argues that: (1) the record lacks sufficient evidence to support the finding that he assisted in smuggling aliens; (2) the IJ and BIA erred in holding that he did not maintain his domicile in the United States; (3) he was denied due process because his initial appearance, at which the record says he admitted to the alien smuggling, was not recorded and transcribed, and he was not given an opportunity to present evidence concerning his domicile.

### 1. Jurisdiction

■ The INS argues that we lack jurisdiction to review Mr. Cortez–Acosta's claims because he did not raise them before the BIA. We have described this as a jurisdictional defect. "Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter."[4]

We reject the INS's argument with respect to Mr. Cortez–Acosta's first argument, because Mr. Cortez–Acosta raised it. He said in his pro se notice of appeal to

the BIA, quoted above, that there was insufficient evidence to establish his participation in alien smuggling.

■ Mr. Cortez–Acosta's appeal to the BIA did not address his domicile or due process issues at all, so we are precluded from reviewing those aspects of the administrative determination. The exception for constitutional issues that the BIA lacks jurisdiction to address[5] has no application, because the BIA could have addressed the issues of whether the IJ should have either recorded his hearing at which the admissions were made or asked him again if he so admitted at his recorded hearing, and whether the IJ should have let him address the issue of domicile.[6] He has not pointed to a statute or regulation that precluded recording and transcribing, under which the BIA would have been bound,[7] nor has he argued that the issue could not otherwise have been presented to the BIA.

### 2. Sufficiency of Evidence

■ Mr. Cortez–Acosta did raise in his appeal to the BIA his claim that there was not enough evidence to prove that he assisted in alien smuggling. He claims, as is clear enough from his notice of appeal to the BIA, that the authorities just assumed he was helping the driver to smuggle in the alien in the trailing car that the driver also owned, because he was a passenger.

■ The government has the burden of proof in deportation proceedings. It must prove the facts supporting deportability by "clear, unequivocal, and convincing evidence."[8] The alleged facts supporting deportability were that "On or about December 4, 1994, you knowingly encouraged, induced, assisted, abetted and aided

---

**4.** *Vargas v. INS*, 831 F.2d 906, 907–08 (9th Cir.1987).

**5.** *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir.1994).

**6.** *See Vargas*, 831 F.2d at 908.

**7.** *Cf. Liu v. Waters*, 55 F.3d 421, 425 (9th Cir.1995).

**8.** *Gameros–Hernandez v. INS*, 883 F.2d 839, 841 (9th Cir.1989) (citing *Woodby v. INS*, 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)).

Zeferino Hernandez–Gabriel an alien, to enter the United States at or near Tecate, California at a place, or in a manner, other than designated by immigration officials of the United States for the entrance of immigrants into the United States." Although we review for "reasonable, substantial, and probative evidence in the record as a whole," our review examines whether "the INS has successfully carried this heavy burden"[9] of "clear, unequivocal, and convincing evidence."[10]

The INS argues that it carried its burden because Mr. Cortez–Acosta admitted that he did this at the "master" hearing which was not recorded and transcribed, and at his subsequent recorded hearing, he acquiesced to the IJ's statement that he had so admitted.

This is a close case, because Mr. Cortez–Acosta may well have admitted to the charges, but the standard of proof is very demanding. We take up Mr. Cortez–Acosta's subsequent acquiescence first, because if he had made it perfectly clear at the second hearing that he did indeed admit at the first hearing to the alien smuggling, that would be very substantial evidence. But the acquiescence is not so clear. In his introductory remarks, the immigration judge did tell Mr. Cortez–Acosta that he had a right "to tell me what you like about your case." And the IJ said "you already told me that you did engage in alien smuggling, that you did aid and abet the illegal entry of Zefarino Hernandez Gabriel at or near Tecate, California on or about December 4, 1994." Mr. Cortez–Acosta never denied that in the hearing. But before the IJ asked "Is that correct, sir?" he recited several other things about the purpose of the hearing, focusing on the issue of domicile. The sentence immediately preceding "Is that correct?" "Yes, sir" was "And pursuant to the application and

pursuant to my asking you at pretrial about what the issues in the case are, you've indicated that you have been working in the United States but that your residence has been in Mexicali, Mexico." So the "Yes, sir" may well have been in response to the residence question, and Mr. Cortez–Acosta may not have meant his "yes, sir" to apply to the IJ's earlier statement that he had admitted the alien smuggling charge. The remainder of the hearing focused entirely on the residence issue and did not touch on the alien smuggling charge. Because the hearing did not provide a clear opportunity for Mr. Cortez–Acosta to address the alien smuggling charge, or whether he had previously admitted to it, the acquiescence inference, that this pro se litigant must have agreed with the IJ's statement because he did not express disagreement, is weak. Although the judge did speak more extensively about the prior admission in his oral decision, Mr. Cortez–Acosta did not affirm or acquiesce in those remarks. The oral decision came after the colloquy with Mr. Cortez–Acosta, when the IJ had already asked both sides if they had anything else to say, and when they did not, concluded the taking of evidence.

That leaves us with the admissions at the earlier master hearing that were not recorded. The INS regulations provide, with regard to individual hearings, that "no further evidence need be received as to any facts admitted during the pleading,"[11] but also provide that "[t]he hearing shall be recorded verbatim."[12] The regulations do not require that the INS record and transcribe the master calendar hearing. What we have in this case is not a verbatim recording of the critical admission at the master calendar hearing, but a verbatim recording of the IJ's subsequent recitation at the individual hearing that

9. *Gameros–Hernandez,* 883 F.2d at 841.

10. *Woodby,* 385 U.S. at 286, 87 S.Ct. 483; *Gameros–Hernandez,* 883 F.2d at 840.

11. 8 C.F.R. § 242.15 (1996), now 8 C.F.R. § 240.46.

12. 8 C.F.R. § 242.16(c) (1996), now 8 C.F.R. § 240.47.

Mr. Cortez–Acosta made the earlier admission.

Is the proof of Mr. Cortez–Acosta's admission strong enough to amount to "clear, unequivocal, and convincing evidence"?[13] We conclude that it is not. According to the IJ, Mr. Cortez–Acosta admitted during the master hearing that he was involved in alien smuggling. The IJ made written notations of his admissions, but it is unclear when. At the September 11 hearing, the IJ stated that the April 9 order to show cause was "corrected *nunc pro tunc* with markings today by me," which suggests that the handwritten words "admit" were not written contemporaneously with the admissions, but instead were added five months later. The IJ was probably entirely correct, but "probably" is a lower standard than "clear, unequivocal, and convincing." A judge presiding over a master calendar with multiple individual cases might well confuse one case with another in trying, after the fact, to recollect what happened at a particular hearing.

It may be that there was other evidence before the IJ that would furnish both proof of Mr. Cortez–Acosta's admissions and an explanation of how a judge could remember such a detail from a case five months old, but if there is, the INS has not put it in the certified administrative record. Unlike the petitioner in *Trias–Hernandez v. INS*,[14] the administrative record does not include a statement given by Mr. Cortez–Acosta. If he made oral admissions at his unrecorded master hearing, that would suffice, but the record does not adequately establish that he did. A verbatim recording would have made the admissions stick by removing all doubt that they were made, but there was no verbatim recording.

The master hearing had the form, and some of the trappings, of an adjudicatory proceeding: It was held in a hearing room before an IJ, and Mr. Cortez–Acosta was given notice by means of an order to show cause. The hearing was in the nature of an arraignment; it was an opportunity for the alien to confront the charges in the show cause order, and to admit or contest them. But we have no contemporaneous recording. If the master hearing *had* been recorded and transcribed, the IJ's determination that Mr. Cortez–Acosta had made certain admissions would not be treated merely as evidence of what Mr. Cortez–Acosta said, but as a finding of fact that we would sustain if supported by the record.

Because there was no contemporaneous recording, we cannot say that Mr. Cortez–Acosta's supposed admission of guilt was made within the confines of the adjudicatory process. Without a record of the master hearing, we have no way to verify that the IJ actually asked Mr. Cortez–Acosta the questions he supposedly answered, that the questions were phrased clearly enough to be understood by someone relying on a translation, and that Mr. Cortez–Acosta's answers were responsive to the questions asked. In short, without a contemporaneous recording, we have no way to confirm the IJ's findings or to review his decision for factual or legal error.

■ We are bound to give the IJ the normal deference owed to an adjudicator, such as sustaining his findings when supported by substantial evidence.[15] But this deference is owed only when the judge acts in the context of the adjudicatory process and his findings are effectively reviewable on appeal. When the IJ acts outside this process, we treat his findings as the observations of an ordinary witness. Here, the master hearing fell short of what we expect in an adjudicatory proceeding, and so we must treat the IJ's report of

---

13. *Woodby,* 385 U.S. at 286, 87 S.Ct. 483; *Gameros–Hernandez,* 883 F.2d at 841.

14. *Trias–Hernandez v. INS,* 528 F.2d 366 (9th Cir.1975).

15. *See Gameros–Hernandez,* 883 F.2d at 841.

what Mr. Cortez–Acosta said as evidence rather than as findings of fact. This subtle, but important, distinction is outcome-determinative in this case. When an adjudicator acts without the minimal trappings of an adjudicatory proceeding, such as in the absence of a contemporaneous recording, he is no longer entitled to the deference normally owed to a judicial officer.

The circumstances do not, as a matter of common sense, show an overwhelming probability of guilt, which would make it more likely that he admitted what it was futile to dispute. Mr. Cortez–Acosta was not driving and did not own the car, and the illegal alien was in a different car. It is not obvious how Mr. Cortez–Acosta's riding in the car without any illegal aliens would help to smuggle in the illegal alien in the other car. He was not charged with the crime of alien smuggling (or anything else), so there is no conviction. There is a real possibility that this man is not deportable, and never admitted that he was.

Thus we are compelled to grant the petition for review, because the weakness of the administrative record does not satisfy the stringent evidentiary standard for deportation.

The petition for review is GRANTED. The BIA decision is VACATED. This case is REMANDED for further proceedings consistent with this opinion.