[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-15783

_____

BIA No. A90-358-688

ALBERT ADEFEMI,

Petitioner-Appellant,

versus

JOHN ASHCROFT, as Attorney General of U.S.,
Ms. ROSEMARY MELVILLE, as the District
Director for INS,
UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,

Respondents-Appellees.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

**(September 28, 2004)**

Before EDMONDSON, Chief Judge, and TJOFLAT, ANDERSON, BIRCH,
DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON, PRYOR

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 28, 2004
THOMAS K. KAHN
CLERK

and KRAVITCH[*], Circuit Judges.

KRAVITCH, Circuit Judge:

Albert Adefemi, a citizen of Nigeria, petitioned this court for review of a decision by the Board of Immigration Appeals ("BIA"), challenging its determination that Adefemi could be deported on the basis of a firearms offense.[1] The main issue on appeal is whether the Immigration and Naturalization Service ("INS") presented sufficient evidence for the BIA to conclude that the INS demonstrated Adefemi's conviction of a firearms offense by clear and convincing evidence.[2] Reviewing the BIA's decision under the highly deferential "substantial evidence" standard, we hold that there was sufficient evidence in the record for the BIA to find that the INS met its burden and affirm.

I.      Background

The facts of this case are straight forward. Adefemi entered the United

---

[*] Circuit Judge Kravitch elected to participate in this decision, pursuant to 28 U.S.C. § 46(c).

[1] A panel of this court reversed the BIA's decision and stayed Adefemi's deportation. Adefemi v. Ashcroft, 335 F.3d 1269 (11th Cir. 2003), withdrawn, Adefemi v. Ashcroft, 358 F.3d 828 (11th Cir. 2004), vacated, 358 F.3d 828, 840. The original panel withdrew that decision, but issued another opinion that came to the same conclusion. Adefemi v. Ashcroft, 358 F.3d 828 (11th Cir. 2004), vacated, 358 F.3d 828, 840. This court vacated the second opinion and granted a rehearing en banc. Id. at 840.

[2] For the reasons stated in our previous opinion, we hold that we have jurisdiction over this appeal. Adefemi v. Ashcroft, 358 F.3d 828, 831-33 (11th Cir. 2003), vacated, 358 F.3d 828, 840.

States without inspection in December 1977. He became a permanent resident in 1989. On December 1, 1993, the INS served Adefemi with an order to show cause why he should not be deported, alleging that he was deportable under the Immigration and Nationality Act ("INA") § 241(a)(2)(A)(ii) based on crimes constituting moral turpitude, i.e. two theft convictions.[3] An immigration judge ("IJ") found that Adefemi was deportable and that he was ineligible for relief under INA § 212(c).[4] Adefemi appealed the IJ's decision to the BIA, which determined that Adefemi was ineligible for § 212(c) relief based on the newly enacted Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The BIA, however, remanded the case to the IJ to permit Adefemi to contest his deportability because he had conceded that issue in his appeal to the BIA.

On remand, the INS added another charge of deportability, alleging that Adefemi's theft convictions constituted aggravated felonies under INA §

---

[3] INA § 241(a)(2)(A)(ii) states: "Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii) (transferred from § 1251 in 1996).

[4] At the time, INA § 212(c), as interpreted by the courts, gave the Attorney General discretion to grant relief from deportation based on equitable factors. See 8 U.S.C. § 1182(c) (1995), repealed by Pub. L. 104-208, § 304(b), Sept. 30, 1996, 110 Stat. 3009-597; Farquharson v. United States Attorney Gen., 246 F.3d 1317, 1323-24 (11th Cir. 2001).

241(a)(2)(A)(iii) ("first additional charge").[5]  Adefemi, however, denied that he

was deportable based on the two theft convictions because those convictions had

been expunged under a state first-offender statute.  The IJ rejected Adefemi's

argument and held that Adefemi was deportable on both the original charge and on

the first additional charge.  The BIA affirmed the IJ's decision on deportability,

but again remanded to determine whether Adefemi could apply for § 212(c) relief

based on recent decisions of this court.  During a hearing on remand, Adefemi

acknowledged several other convictions and arrests, including the circumstances

surrounding Georgia Citation Number 0129, under which Adefemi received a

citation for a weapons violation.[6]  As a result of this testimony, the INS added a

---

[5] INA § 241(a)(2)(A)(iii) states: "Any alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii) (transferred from § 1251 in 1996).

[6] At the hearing, Adefemi stated that the police pulled him over for weaving through traffic lanes.  At the § 212(c) hearing, Adefemi admitted to the officer who pulled him over that he had a pistol in the armrest of the car:

Q.    Did he ask if you had a gun in the car?
A.    Yeah.  He asked me, I told him yeah.
Q.    Why did you have a gun?
A.    Yeah, I had a gun.
Q.    Where did you have the gun in the car?
A.    I put it in the, I got an armrest that's got a compartment.  I put it in there.
Q.    In the armrest of the car you keep a gun?
A.    (Indiscernible) yeah.
Q.    What kind of gun?
A.    .22.
Q.    Pardon?
A.    .22.
Q.    .22 pistol?

4

third charge of deportability under INA § 241(a)(2)(c) ("second additional charge").[7]

Although Adefemi admitted that he had been convicted of carrying a concealed weapon and that he had a gun in his car at the time of arrest, he challenged whether the government established that he had been convicted of carrying a concealed firearm by clear and convincing evidence. In order to satisfy its burden, the INS introduced into evidence a certified record of conviction from the City Court of Atlanta. Adefemi contended that the document was ambiguous because it failed to make clear, among other things, his plea, the disposition of the

---

A.      Yes, sir.
The officer arrested Adefemi as a result of his possession of this pistol and Adefemi eventually went to traffic court. At the § 212(c) hearing, Adefemi testified:
Q.      Did you plead guilty?
A.      Yes, sir.
Q.      What did you plead guilty to?
A.      Concealed weapon.
Q.      And what were you charged, what was your sentence?
A.      330 dollars fine and I pay.
Q.      Anything else, any other punishment?
A.      No, that's it.

[7] INA § 241(a)(2)(c) states: "Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying . . . any weapon . . . which is a firearm . . . in violation of any law is deportable." 8 U.S.C. § 1227(a)(2)(c) (transferred from § 1251 in 1996).
        Adefemi argues that the INS should have been estopped from pursuing the firearms offense as an additional charge of deportability. To establish estoppel against the government, Adefemi must prove, "in addition to the traditional elements of estoppel, some affirmative misconduct by the government." Tefel v. Reno, 180 F.3d 1286, 1303 (11th Cir. 1999). Adefemi has demonstrated no affirmative misconduct by the government.

5

charge, and the type of weapon involved.[8] In essence, Adefemi argued that the citation did not establish his conviction by clear and convincing evidence. The IJ rejected his arguments, finding that the document was clear and convincing evidence of a firearms conviction and, therefore, held that Adefemi was deportable based on that offense. In addition, the IJ ruled that Adefemi was ineligible for § 212(c) relief because such relief is not available for a firearms conviction.

---

[8] The citation is a two-sided document from the City Court of Atlanta. The front side contains five sections. Section I, entitled "violator," lists Adefemi's name, address, car make and model, and other relevant identifying information. Section II, entitled "violation," lists only one violation, which is "carrying concealed weapon in Violation of Code Section 16-11-126" of Georgia law. Under "remarks" in the "violation" section, several hand-written words appear, which state: "Driver had a 22 cal RG10 in console between seats." Section III lists the location at which the officer pulled Adefemi over. Section IV is a summons that states the time and place at which Adefemi was ordered to appear in court. Section V is the arresting officer's certification that the officer had reasonable grounds to believe that Adefemi committed the offense mentioned in the document. The back of the document is a court record. A line near the top of the back page states "ON ARRAIGNMENT, THE DEFENDANT PLEADS." The words "NOT GUILTY" are stamped in the blank next to those words. The word "FILED" is also stamped above the "NOT GUILTY" stamp. A box entitled "Appearance, Plea of Guilty and Waiver" appears immediately below the "NOT GUILTY" stamp. In that section, Adefemi's signature appears after the statement: "I have been advised of my rights to be represented by counsel and have counsel appointed to represent me if I am indigent; plead not guilty and be tried by a jury or a judge; confront the witnesses against me and not give incriminating evidence against myself. I hereby waive these rights; state that I have not been induced by any threat or promise to enter this plea and do freely and voluntarily enter my plea of Guilty." The words "state case" and "probation" are stamped below these words. The last paragraph of the document reads: "It is considered, ordered and adjudged that the defendant pay a fine of 330.00 Dollars and (in default of such payment) be confined for a term of [unreadable, but probably 12] months (in the _____ County Public Works) (as the State Director of Corrections may direct) (in the City Prison). The confinement specified shall be suspended on payment of the fine and on condition defendant does not again violate the laws of Georgia." A signature, presumably that of the presiding judge or of the clerk, then appears in a blank after the words "[a]s provided by law, I hereby certify that the information on this ticket is a true abstract of the record of this court or bureau in this case." A date stamp also appears.

Adefemi appealed the IJ's decision, arguing that the evidence was insufficient. The BIA found that the City Court of Atlanta document was clear and convincing evidence of a firearms offense and affirmed the IJ's decision. Adefemi appealed the BIA's decision to this court.

II.     Standard of Review

This court reviews administrative fact findings under the highly deferential substantial evidence test. Farquharson v. United States Attorney Gen., 246 F.3d 1317, 1320 (11th Cir. 2001); Lorisme v. INS, 129 F.3d 1441, 1444-45 (11th Cir. 1997). Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision.

We "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quoting Lorisme, 129 F.3d at 1444-45). Thus, we do not engage in a de novo review of factual findings by the BIA. Similarly, we cannot find, or consider, facts not raised in the administrative forum, nor can we "'reweigh the evidence from scratch.'" Mazariegos v. United States Attorney Gen., 241 F.3d 1320, 1323 (11th Cir. 2001) (quoting Lorisme, 129 F.3d at 1444-45); see also Najjar, 257 F.3d at 1278

("Courts of appeal sit as reviewing bodies to engage in highly deferential review of BIA and IJ determinations. . . . Commensurate with this role, we cannot engage in fact-finding on appeal, nor may we weigh evidence that was not previously considered below."). In sum, findings of fact made by administrative agencies, such as the BIA, may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings. Farquharson, 246 F.3d at 1320 ("To reverse a factual finding by the BIA, this Court must find not only that the evidence supports a contrary conclusion, but that it compels one."); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ."); Kenyeres v. Ashcroft, 538 U.S. 1301, 123 S. Ct. 1386, 1388 (2003) ("A reviewing court must uphold an administrative determination in an immigration case unless the evidence compels a conclusion to the contrary.").

We apply the substantial evidence test even when, as in this case, the government is required to prove its case by clear and convincing evidence in the administrative forum.[9] In other words, the fact that the INS was required to prove

---

[9] Burden of proof and standard of review are not the same thing.

The difference is most graphically illustrated in a criminal case. There the

Adefemi's deportability by clear and convincing evidence in the BIA does not

make our review of the BIA's decision more stringent.[10]

>prosecution is generally required to prove the elements of the offense beyond a reasonable doubt. But if the correct burden of proof was imposed at the trial, judicial review is generally limited to ascertaining whether the evidence relied upon by the trier of fact was of sufficient quality and substantiality to support the rationality of the judgment. In other words, an appellate court in a criminal case ordinarily does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, but whether the judgment is supported by substantial evidence.

Woodby v. INS, 385 U.S. 276, 282 (1966). Here, the inquiry is similar: Assuming the BIA applied the correct burden of proof–clear and convincing evidence–we ask merely whether the BIA's finding is supported by substantial evidence. We do not determine de novo whether the INS met its burden of proof to show deportability by clear and convincing evidence.

[10] The dissent cites Sandoval v. INS, 240 F.3d 577 (7th Cir. 2001), Cortez-Acosta v. INS, 234 F.3d 476 (9th Cir. 2000), and Murphy v. INS, 54 F.3d 605, 610–12 (9th Cir. 1995), as support for its argument that other courts apply a less deferential standard of review when the INS is required to prove its case by clear and convincing evidence. These cases, however, do not support the dissent's argument and are not contrary to our interpretation of the substantial evidence test. In Sandoval, an Illinois state court had convicted Sandoval of possession of more than thirty grams of marijuana, but state law allowed Sandoval to collaterally attack his conviction. Sandoval, 240 F.3d at 578. The Illinois state court modified the conviction and sentenced Sandoval to twenty-four months of first-offender probation, a sentence that was only permissible if the state court vacated the original conviction and entered a new conviction for possession of not more than thirty grams of marijuana. Id. at 580. The state court, however, did not expressly vacate the original conviction. Id. Thus, the effect of the sentence modification was uncertain. Id. The INS instituted deportation proceedings and the BIA concluded that Sandoval was deportable; Sandoval appealed. Id. at 579-80. As a matter of law, the Seventh Circuit determined that the INS could meet its burden in the BIA by showing either "1) that the Illinois judge exceeded his authority under state law, thus rendering the [sentence] modification ineffective, or 2) that the sentence modification was legal but not effective for purposes of federal immigration law." Id. at 581. Thus, the issues in Sandoval were questions of law. The Seventh Circuit determined that the INS's arguments regarding these legal issues were incorrect. Because there was no evidence regarding whether Sandoval was found guilty of possession of more than thirty grams of marijuana, or less than thirty grams of marijuana, the Seventh Circuit determined that "the INS did not prove by clear and convincing evidence that Sandoval was convicted of possession of more than thirty grams of marijuana," and reversed. Id. at 581-83. By contrast, in this case, there was only one state court proceeding and no legal questions are before us. In

Under the substantial evidence standard, we cannot look at the evidence presented to the BIA to determine if interpretations of the evidence other than that made by the BIA are possible. Rather, we review the evidence that was presented

addition, the IJ in Sandoval incorrectly placed the burden of proof on the petitioner and the BIA did not rectify this problem. Id. at 581. Here, the IJ correctly placed the burden of proof on the INS. Thus, Sandoval is not on point.

In Cortez-Acosta, the issue was whether the alien previously had admitted encouraging, inducing, assisting, abetting, or aiding another alien to enter the United States illegally. Cortez-Acosta, 234 F.3d at 479-80. In that case, the alleged admission occurred during a hearing before an IJ, but there was no transcript of the hearing, and, thus, the only evidence that Cortez-Acosta actually admitted to such a crime was the notes of the hearing taken by the IJ. Id. at 478. "Without a record of the master hearing, [the Ninth Circuit] had no way to verify that the IJ actually asked Mr. Cortez-Acosta the questions he supposedly answered, that the questions were phrased clearly enough to be understood by someone relying on a translation, and that Mr. Cortez-Acosta's answers were responsive to the questions asked. In short, we have no way to confirm the IJ's findings or to review his decision for factual or legal error." Id. at 482. In our case, by contrast, there is a record of the proceedings in the immigration court and, therefore, we can review that court's decision. Moreover, the Ninth Circuit in Cortez-Acosta determined that, under the circumstances of that case, the deference due under the substantial evidence standard was not appropriate because such deference is due only "when the judge acts in the context of the adjudicatory process and his findings are effectively reviewable on appeal. When [as in Cortez-Acosta] the IJ acts outside this process, we treat his findings as the observations of an ordinary witness. . . . as evidence, rather than as findings of fact." Id. at 482-83. Here, there is a record of Adefemi's proceedings in the immigration court and, therefore, deference to that court's findings is required.

In Murphy, the Ninth Circuit concluded that there was not substantial evidence for the BIA to conclude that the INS proved the petitioner's alienage by clear and convincing evidence. Murphy, 54 F.3d at 612. The INS attempted to demonstrate that the petitioner was not born in the United States Virgin Islands by showing the lack of any birth certificate, by introducing an unauthenticated INS form, and by introducing uncorroborated double hearsay statements. Addressing the INS form, the court stated that "the unauthenticated [form] merits little (if any) weight, as acknowledged by the BIA. Murphy disputed the significant information [listed on the form], such as place of birth, [and] names of parents . . . . Murphy also provided information regarding the source of the information recorded on the form, an INS informant who apparently had some ulterior motive to make statements against Murphy." Id. at 610. The Murphy court concluded that the unauthenticated form and the lack of any other reliable evidence was insufficient to establish the petitioner's alienage. Here, the City Court of Atlanta document is an *official* court document, not an unauthenticated form of a government agency. Furthermore, Adefemi has never contested the validity of the information contained in the document.

10

to determine if the findings made by the BIA were unreasonable.  See Najjar, 257

F.3d at 1283-84, Mazariegos, 241 F.3d at 1324.  To that end, our inquiry is highly

deferential and we consider only "whether there is substantial evidence for the

findings made by the BIA, *not* whether there is substantial evidence for some

*other* finding that could have been, but was not, made." Mazariegos, 241 F.3d at

1324.  That is, even if the evidence could support multiple conclusions, we must

affirm the agency's decision unless there is no reasonable basis for that decision.

See United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir. 2004) (per curiam).

III.    Discussion

The BIA determined that the INS presented clear and convincing evidence

that Adefemi was deportable as a result of a firearms conviction in 1991.  Our task

on appeal, therefore, is to decide if there is substantial evidence in the record to

support the BIA's determination.

The BIA and the IJ relied primarily, if not exclusively, on the City Court of

Atlanta document to determine that Adefemi was convicted of a firearms offense.

The front of that document contains charges for carrying a concealed weapon in

violation of Georgia Code Section 16-11-126.  That section, in turn, prohibits a

person from carrying several listed concealed weapons, including both firearms

and nonfirearms.  Ga. Code Ann. § 16-11-126.  As such, the INS was required to

prove that the crime for which Adefemi was convicted was, in fact, a firearms offense and not some other offense. E.g., Pichardo-Sufren, 21 I. & N. Dec. 330 (B.I.A. 1996). The document contains only one charge—that Adefemi violated Ga. Code Ann. § 16-11-126. In the "remarks" section immediately following the charge, the arresting officer wrote "driver had a 22 cal RG10 in console between seats." No other weapon is listed on the document. Adefemi has not contended, and could not seriously contend, that a .22 caliber RG10 is not a firearm. Similarly, Adefemi has not contended that carrying such a weapon in violation of § 16-11-126 is not a firearms offense under 8 U.S.C. § 1227(a)(2)(c). Thus, it was not unreasonable for the BIA to find that the front side of the City Court of Atlanta document established that Adefemi was *charged* with a firearms offense.

Next, we address whether it was unreasonable for the BIA to find that the City Court of Atlanta document also established that Adefemi was *convicted* of a firearms offense. The reverse side contains a section entitled "appearance, plea of guilty and waiver." Adefemi signed that section immediately under a paragraph that concludes "I . . . do freely and voluntarily enter my plea of Guilty." In addition, in a section entitled "upon trial, the defendant [unreadable]," the words "[i]t is considered, ordered and adjudged that the defendant pay a fine of 330.00 Dollars and (in default of such payment) be confined for a term of [unreadable,

12

probably 12] months" appear. The appropriate official signed this section of the document. Finally, the word "probation" is stamped across the document in the section entitled "disposition and sentence." From all of this evidence, it is not unreasonable for a fact-finder to conclude that Adefemi pleaded guilty to the only charge listed on the document–carrying a concealed weapon described as a firearm–and that his punishment for this crime was a fine of $330.00 and a probated sentence.

Admittedly, the document contains several ambiguities. For example, at the top of the reverse side, next to the words "on arraignment, the defendant pleads," a "not guilty" stamp appears, implying that Adefemi at first may have pleaded not guilty to the charge. In addition, several of the blanks are not completed. We must, however, view the evidence in the light most favorable to the BIA's finding that the INS met its burden and, when so viewed, the ambiguities do not compel us to conclude that the BIA's decision was erroneous. In the light most favorable to the BIA's decision, the City Court of Atlanta document suggests that Adefemi initially may have pleaded not guilty, but that he later changed his plea to guilty. He was ordered to pay a fine and received a probated sentence, results that would only be appropriate for a conviction. We cannot say that these inferences are unreasonable. Therefore, we conclude that the City Court of Atlanta document, by

13

itself, provides sufficient evidence to affirm the BIA's finding that the INS proved

Adefemi's deportability based on a firearms conviction by clear and convincing

evidence.[11]

Because we have held that the BIA's finding that the INS presented clear

[11] We also note that there is other relevant evidence of Adefemi's conviction in the administrative record. In particular, Adefemi admitted that he had been convicted of a concealed weapon offense. Adefemi argues that under Pichardo-Sufren, 21 I. & N. Dec. 330 (B.I.A. 1996), his testimony cannot be considered because it is extrinsic evidence of the conviction. The issue in Pichardo-Sufren was whether an alien's testimony that he was convicted of criminal possession of a weapon constitutes clear and convincing proof of his deportability "where the *identity of the weapon that he was convicted of possessing* and the subdivision of the law under which he was convicted [could not] be ascertained from the conviction document that was offered into evidence." Id. at 331 (emphasis added). Here, however, the City Court of Atlanta document identifies the weapon Adefemi was convicted of possessing and his testimony served to corroborate the document.

In a related argument, Adefemi contends that any reliance on his testimony is impermissible. That argument fails. When reviewing an administrative decision, we generally look at the entire record, and Adefemi's testimony is part of the record. Moreover, this court has previously held that an alien's testimony that he was convicted of a deportable offense can, in certain circumstances, constitute sufficient evidence to affirm the BIA's determination that an alien is deportable. See Fequiere v. Ashcroft, 279 F.3d 1325 (11th Cir. 2002). In any event, Adefemi's testimony is unnecessary to decide this case because the City Court of Atlanta document provides sufficient evidence for us to affirm the BIA's decision.

Adefemi also argues that the City Court of Atlanta document does not provide sufficient evidence to affirm the BIA's decision because the document does not specify the particular subsection of Georgia law that Adefemi violated. The section under which Adefemi was charged, Ga. Code Ann. § 16-11-126, contains both firearm and nonfirearm offenses. Because of this fact, Adefemi argues that the document does not show that Adefemi was convicted of a firearms offense. See Pichardo-Sufren, 21 I. & N. Dec. at 334 ("[A]bsent any reference in the Certificate of Disposition to the subdivision under which the respondent was convicted . . . we do not find that the court document that was offered into the record establishes the respondent's deportability for a firearms violation . . . ."). Adefemi, however, ignores the second half of the quoted sentence, which, in full, states that "absent any reference in the Certificate of Disposition to the subdivision under which the respondent was convicted *or the weapon that the respondent was convicted of possessing*, we do not find [that the court document satisfies the clear and convincing evidence standard]." Id. (emphasis added). Here, unlike in Pichardo-Sufren, the City Court of Atlanta document describes the weapon as a .22 caliber RG10–a firearm. No other weapon is listed. Thus, Adefemi's argument is not persuasive.

14

and convincing evidence that Adefemi committed a firearms offense was not unreasonable, we must also review the BIA's determination that he is deportable and ineligible for discretionary relief under INA § 212(c). Adefemi was convicted of a firearms offense and, thus, he is deportable. 8 U.S.C. § 1227(a)(2)(c) (transferred from § 1251 in 1996) ("Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or *carrying* . . . any weapon . . . which is a *firearm* . . . in violation of any law is deportable." (Emphasis added)). The BIA determined that, because Adefemi committed a firearms offense, he is ineligible for § 212(c) relief.[12] Adefemi appeals and argues that he should be eligible to receive § 212(c) relief.[13] An alien convicted of a firearms violation, however, is not eligible for

---

[12] We have jurisdiction to review this decision because Adefemi was in deportation proceedings prior to April 1, 1997, and, therefore, the new jurisdictional rules regarding appellate review of the BIA's § 212(c) determination under the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") do not apply. Cunningham v. United States Attorney Gen., 335 F.3d 1262, 1266 (11th Cir. 2003) ("The 'general rule' is that the 1996 amendments do not apply to aliens who are in deportation proceedings prior to April 1, 1997."). We have jurisdiction over appeals of a denial of § 212(c) relief in deportation cases that began prior to the enaction of IIRIRA. See id. at 1264-66; Rodriguez-Padron v. INS, 13 F.3d 1455 (11th Cir. 1994) (reaching the merits of whether an alien can receive § 212(c) relief when being deported as a result of a conviction for a firearms offense).

[13] We note that Adefemi also argued that he should receive discretionary relief under INA § 245(a). Adefemi, however, did not make this argument in the administrative forum and, therefore, we do not have jurisdiction to review this claim. Najjar, 257 F.3d at 1286 n.14. In addition, because we affirm the BIA's decision that Adefemi is deportable and ineligible for § 212(c) relief as a result of the firearms conviction, we need not reach the BIA's decisions regarding his deportability for the two thefts, or whether he was statutorily ineligible for § 212(c)

15

such relief.  Cato v. INS, 84 F.3d 597, 602 (2d Cir. 1996); Rodriguez-Padron v. INS, 13 F.3d 1455, 1460-61 (11th Cir. 1994); Esposito, 21 I. & N. Dec. 1, 10 (B.I.A. 1995).

IV.    Conclusion

For the above reasons, we hold that the City Court of Atlanta document alone provided sufficient evidence for the BIA to find that the INS presented clear and convincing evidence that Adefemi was convicted of a firearms offense.  The front of the document contained only one charge, carrying a concealed weapon described as a .22 caliber RG10, and the BIA interpreted the reverse side of the document to be a record of conviction showing that Adefemi pleaded guilty to a firearms offense, was ordered to pay a fine, and received a probated sentence. Although there are ambiguities in the document, these ambiguities are not sufficient to compel us to conclude that the BIA's finding is unreasonable.  We therefore affirm the BIA's finding that Adefemi committed a deportable offense. In addition, we affirm the BIA's conclusion that because he committed a firearms offense, Adefemi is not eligible for § 212(c) relief.

AFFIRMED.

---

relief because he could not meet the statutory residency requirement.  Finally, Adefemi urges us to consider his 28 U.S.C. § 2241 habeas petition.  Because we have considered all of the arguments presented in that petition, the petition is dismissed as moot.  Farquharson, 246 F.3d at 1319 n.2.

16

BARKETT, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion that our review of a BIA decision for substantial evidence remains exactly the same when the government had the burden below to show a conviction by clear and convincing evidence. Although our review must remain highly deferential, we must apply that deferential review to the specific decision taken below – in this case, that the government demonstrated a conviction by clear and convincing evidence.

Whether a conviction has been sustained is a question of fact on which we defer to the Board if its determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. 1105a(a)(4) (repealed 1996) (applicable to this case under IIRIRA § 309(c)(4)(1)(A)). Under this "substantial evidence" standard, we will not reverse the Board's determination unless "a reasonable factfinder would have to conclude" that no conviction has been proved. See Lorisme v. INS, 129 F.3d 1441, 1445 (11th Cir. 1997).

Although our own review is deferential, the INS must prove an alien's deportability by "clear and convincing evidence." 8 U.S.C. § 1229a(c)(3)(A). While it is true that this Court will not reverse a factual finding of the Board unless the evidence compels a contrary determination, the question in this case is whether the record compels us to conclude that the INS failed to meet its burden.

17

Our review remains highly deferential, but the particular finding we are reviewing requires more from the record than an ordinary finding of fact with a lesser burden. We must see at least some evidence that might allow a reasonable fact-finder to conclude that the government met its burden of showing a conviction by clear and convincing evidence.[1]

As the majority implicitly recognizes, several other circuits have concluded that the substantial evidence *does* differ when considering whether the government has met this heightened burden. In Sandoval v. INS, 240 F.3d 577 (7th Cir. 2001), the Seventh Circuit pointed to the ambiguous effect of a subsequent change in the petitioner's sentence and concluded that "the INS did not prove by clear and convincing evidence that Sandoval was convicted of possession of more than thirty grams of marijuana." Id. at 583. Similarly, in Cortez-Acosta v. INS, 234 F.3d 476 (9th Cir. 2000), the Ninth Circuit reversed an order of deportation because the petitioner's admission of culpability in alien smuggling was too ambiguous to meet the "clear and convincing" burden. In discussing the standards of review, the court noted that "although we review for reasonable, substantial,

---

[1]As I argued in the panel opinion, Adefemi v. Ashcroft, 358 F.3d 828 (11th Cir. 2004), I do not believe that the single document submitted in this case, which amounts to little more than a traffic ticket with a great many blanks left unfilled, constitutes such evidence, especially considering that the government had ample opportunity to submit additional evidence that could have clarified its meaning.

and probative evidence in the record as a whole, our review examines whether the INS has successfully carried this heavy burden of clear, unequivocal and convincing evidence." Id. at 481 (citations omitted). See also Murphy v. INS, 54 F.3d 605, 612 (9th Cir. 1995) ("Because the BIA gave significant weight to inherently unreliable evidence and shifted the burden of persuasion to Murphy, it inappropriately concluded that the government had met its burden of proving alienage by clear and convincing evidence. Because the BIA's determination is not based on substantial evidence in the record as a whole, we hereby grant Murphy's petition. . . .").

The majority attempts to distinguish each of these cases on factual grounds. Granted, Adefemi does not present exact factual parallels to any of these cases. Nonetheless, in each case the reviewing court considered whether the government met its burden to show a conviction by clear and convincing evidence. Even though there was *some* (questionable or ambiguous) evidence in the record that might have supported a conviction, the court noted that the evidence did not meet the heightened burden placed upon the government. The same principle should apply in this case.