**Erlinda Gerardo ZARA, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–74077.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 2004.

Filed Sept. 7, 2004.

---

11. *See id.*

12. *Id.*

Rodel E. Rodis, San Francisco, CA, for the petitioner.

Rena I. Curtis, Department of Justice, Washington, DC, for the respondent.

Before DAVID R. THOMPSON, TASHIMA, and RAWLINSON, Circuit Judges.

THOMPSON, Senior Circuit Judge.

Petitioner Erlinda Gerardo Zara petitions for review of the Board of Immigration Appeals' ("BIA") affirmance without opinion of the immigration judge's ("IJ") denial of her applications for asylum, withholding of removal, voluntary departure and relief under the Convention Against Torture ("CAT"). In her appeal to the BIA, the only issue Zara raised was her challenge to the IJ's finding that the Aquino Party was no longer in power when she left the Philippines and the impact that alleged error had on her other applications for relief. Zara did not present to the BIA the critical issue she now presents to us concerning the IJ's adverse credibility finding, nor did she challenge the IJ's determination that she presented insufficient evidence of torture as defined by the CAT, nor did she contend the IJ abused his

discretion in denying her request for voluntary departure.

Because Zara did not exhaust her administrative remedies, we do not have jurisdiction to consider the claims she presents in her petition for review. Accordingly, that petition is dismissed.

## BACKGROUND

Zara, a native and citizen of the Philippines, entered the United States on July 12, 1992, pursuant to a non-immigrant visitor's visa. According to the terms of the visa, Zara was authorized to remain in this country only until January 12, 1993. She overstayed that authorization.

On July 13, 1994, Zara filed an application for asylum. In her application, she stated that she was requesting asylum because she feared that she would be killed by members of the Aquino Party if she returned to the Philippines. She explained that she was an active member of the Marcos party and that, as a result of her political activities, she had been beaten and had received death threats. Specifically, Zara alleged that on two occasions, after attending meetings in support of Marcos, she was confronted by members of the Aquino Party who threatened to kill her, beat her up, and attempted to rape her. She also alleged that she was twice detained for three hours by "hooligans of the opposition party" who pointed guns at her and threatened her. She asserted that she had to leave her job and had difficulty attending church due to the threats to her life.

Upon interviewing Zara, the Immigration and Naturalization Service ("INS") determined that her claims of past persecution and fear of future persecution were not credible and referred her application to an IJ.

After a hearing on the merits, the IJ denied Zara's applications for asylum under Immigration and Nationality Act ("INA") § 208(a)(1), 8 U.S.C. § 1158(a)(1), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). With respect to the asylum claim, the IJ found Zara was not a credible witness. That determination was based on Zara's vague and nonresponsive testimony, material inconsistencies between her application materials and her testimony at the hearing, and inconsistencies within that testimony. The IJ also found that Zara failed to establish her identity. The IJ also determined that even if Zara were found to be credible, she had failed to establish either past persecution or a well-founded fear of future persecution. The IJ explained that the alleged acts of persecution (slapping and detention) did not rise to the level of persecution within the meaning of the statute. The IJ also noted that Zara departed the Philippines after the Aquino regime had ceded control of the Philippines and available evidence indicated that Marcos supporters are no longer subject to abuse and threats. Because Zara could not satisfy the lower standard of proof required for asylum, the IJ denied her claim for withholding of removal under INA § 241(b)(3).

The IJ also determined that there was no competent and credible evidence that Zara had been tortured within the meaning of the CAT. The IJ denied Zara's claim for voluntary departure in the exercise of his discretion, and ordered that she be removed to the Philippines.

Zara appealed the IJ's decision to the BIA. In her notice of appeal, Zara provided the following reason for the appeal:

The Immigration Judge erred in finding that the 'Aquino Party' rule ended in May 1992 when, in fact, General Fidel V. Ramos, was elected president in May

1992 as a member of the Aquino Party so the Aquino Party rule continued on at the time respondent left the Philippines contrary to the finding that the Aquino Party was no longer in power when respondent left the Philippines.

In her brief on appeal to the BIA, Zara reiterated that the immigration judge erred in finding that the Aquino Party was no longer in power at the time she left the Philippines. She explained:

> Consequently, as a result of the IJ's error in finding that the Aquino regime was out of the [sic] power at that time of Respondent's departure in July of 1992, the IJ erroneously denied Respondent's application for asylum after finding that Respondent did not sufficiently establish her claims of past and future persecution from the Aquino party or because she was a supporter of the Marcos regime. Furthermore, the IJ also erroneously denied Respondent's other applications for relief as a result of the IJ's error.

On November 1, 2002, the BIA affirmed, without opinion, the decision of the IJ pursuant to its streamlining procedures. *See* 8 C.F.R. § 3.1(e)(4). Thus, the IJ's decision became the final agency decision. *Id.*

## DISCUSSION

Zara raises a number of arguments in support of her petition for review. Specifically, she challenges the IJ's adverse credibility determination and the finding that she failed to establish her identify. In addition, Zara contends there was sufficient evidence supporting her claim of past persecution, which established a presumption of future persecution that the government failed to rebut, and she argues generally that she established all of her claims for relief.

The issues Zara presents to this court in her petition for review differ from the issues she presented in her appeal to the BIA. In her appeal to the BIA, the only issue Zara raised pertained to the IJ's alleged factual error in finding that the Aquino Party was no longer in power at the time she departed the Philippines and the impact that factual finding had on her application for asylum and other applications for relief. Zara did not raise in her appeal to the BIA any of the other issues she now includes in her petition for review.

■ We have held that "[f]ailure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter." *Vargas v. United States Dept. of Imm. & Nat.*, 831 F.2d 906, 907–908 (9th Cir.1987). A petitioner cannot satisfy the exhaustion requirement by making a general challenge to the IJ's decision, but, rather, must specify which issues form the basis of the appeal. *See, e.g., Cortez–Acosta v. INS*, 234 F.3d 476, 480 (9th Cir.2000) (explaining that we lacked jurisdiction to address petitioner's arguments regarding domicile and due process because he had failed to raise the issues on appeal to the BIA); *Mabugat v. INS*, 937 F.2d 426, 430 (9th Cir.1991) (petitioner's failure to raise certain arguments before the BIA in support of his claim for voluntary departure stripped this court of jurisdiction to address these issues).

Zara contends that the issues raised in her petition for review to this court should be deemed exhausted because the INS "fully briefed" these issues before the BIA. The record does not support this contention. The INS did not address any of the issues Zara now presents in her petition for review. Rather, in the brief the INS filed with the BIA in response to Zara's appeal, it asserted generally:

The Immigration and Naturalization Service hereby adopts the well-reasoned opinion of the Immigration Judge.... The IJ's decision to deny asylum, withholding of removal, relief under the Convention Against Torture, and voluntary departure is amply supported by the record.

This broad assertion did not provide the BIA with notice of the issues Zara now presents to us.

■ This circuit has not addressed the question whether the exhaustion requirement applies to "streamlined" decisions—i.e., when a single member of the BIA affirms the IJ's decision without opinion pursuant to 8 C.F.R. § 3.1(e)(4). When the BIA issues a "streamlined" decision, the decision of the IJ becomes the final agency determination. 8 C.F.R. § 3.1(e)(4)(B)(ii). Thus there is a question as to whether a petitioner seeking review of a "streamlined" decision by the BIA must establish that the issues raised in her petition for review to this court were presented in her appeal to the BIA.

We conclude that the exhaustion requirement applies to "streamlined" cases. The policy underlying the exhaustion requirement is to give an administrative agency the opportunity to resolve a controversy or correct its own errors before judicial intervention. *Sagermark v. INS,* 767 F.2d 645, 648 (9th Cir.1985).

When deciding whether to streamline a case, the BIA evaluates, among other things, whether the issues on appeal are squarely controlled by existing precedent or are so insubstantial that three-member review is not warranted. 8 C.F.R. § 3.1(a)(7)(ii). Accordingly, the decision whether to streamline is affected by what issues the petitioner chooses to appeal to the BIA. The failure to include issues may result in a decision to streamline which otherwise would not have been made. Put

another way, if Zara had properly presented to the BIA the issues she now raises before this court, her appeal to the BIA might have been assigned to a three-member panel for review and decision. If we were to hold that the BIA's streamlining decision excused the administrative requirement of exhaustion of remedies, we would legitimize the very vice the exhaustion requirement was designed to prevent, namely, "premature interference with the agency's processes." *Liu v. Waters,* 55 F.3d 421, 424 (9th Cir.1995), quoting *Roque–Carranza v. INS,* 778 F.2d 1373, 1374 (9th Cir.1985).

■ Because Zara failed to exhaust in her appeal to the BIA the issues that she presents in her petition for review to this court, which issues are critical to the claims she asserts, we lack jurisdiction to consider those claims. Accordingly, Zara's petition for review is dismissed for lack of jurisdiction.

PETITION DISMISSED.

TASHIMA, Circuit Judge, dissenting:

The majority holds that we do not have jurisdiction to review Zara's claims, because she failed to exhaust her administrative remedies by not raising them in her brief to the BIA. Yet, none of the cases relied on by the majority for the proposition that Zara failed to exhaust her administrative remedies involved a BIA affirmance without opinion (or "streamlining"); indeed, all but one were decided before the streamlining regulation was even adopted. Because the IJ's decision is the final agency determination under review in this streamlined case, I would hold that Zara exhausted her administrative remedies by raising them before the IJ. I therefore respectfully dissent from the majority's contrary holding.

The jurisdictional exhaustion requirement, as opposed to any prudential implications of exhaustion, is bottomed on the doctrine of the separation of powers. *See Marathon Oil Co. v. United States*, 807 F.2d 759, 768 (9th Cir.1986). Thus, we can review only those issues actually decided by the agency, *see Fisher v. INS*, 79 F.3d 955, 963 (9th Cir.1996) (en banc), and, indeed, cannot affirm the agency on a basis it did not explicitly consider. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *see also INS v. Ventura*, 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

In streamlined cases from the BIA, the decision of the IJ becomes the agency's final decision:

> If the Board member determines that the decision [of the IJ] should be affirmed without opinion, the Board shall issue an order that reads as follows: "The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination. *See* 8 CFR 3.1(e)(4)."

8 C.F.R. § 3.1(e)(4)(ii) (2003).[1] Only a single member of the BIA reviews the IJ's decision and, as specified above, the regulation dictates the precise language of the order of affirmance. The reviewing member is prohibited from stating any reasons for his or her decision. *See id.* ("An order affirming without opinion, issued under authority of this provision, shall not include further explanation or reasoning."). Thus, in every sense, the IJ's decision represents the final decision of the agency, and we have so held. *See Falcon Carriche v. Ashcroft*, 350 F.3d 845, 855 (9th Cir. 2003).

Given this administrative structure, none of the reasons which underlie the doctrine of the exhaustion of administrative remedies supports requiring exhaustion *beyond* the final agency decision that is subject to judicial review. *See Falcon Carriche*, 350 F.3d at 855. (explaining that "[i]f the BIA streamlines a case, the IJ's decision becomes the final agency decision, and the regulatory scheme gives us a green light to scrutinize the IJ's decision as we would a decision by the BIA itself"); *compare Navas v. INS*, 217 F.3d 646, 658 n. 16 (9th Cir.2000) (holding in a non-streamlined case that"[this court's] review is confined to the BIA's decision and the bases upon which the BIA [*i.e.*, the decisionmaker] relied") (first brackets in the original) (internal quotation marks and citation omitted).

Although the majority casts the issue as "whether the exhaustion requirement applies to 'streamlined' decisions," slip op. at 12946, in fact, the issue is how and to what decision the requirement applies, not whether or not it applies. By streamlining Zara's appeal, the BIA by regulation defined the IJ's decision as the final agency determination, the end point of the administrative process. *See Montgomery v. Rumsfeld*, 572 F.2d 250, 253 n. 2 (9th Cir.1978) (noting that statutory exhaustion requirements do "not preclude the agency itself from providing some flexibility in defining the terminal point of the administrative remedy that must be pursued").

When the BIA decides not to streamline a case, the BIA's decision is the final agency decision and we will not review an issue that could have been but was not raised before the BIA. *See, e.g., Cortez–Acosta v. INS*, 234 F.3d 476, 480 (9th Cir.2000); *Navas*, 217 F.3d at 658 n. 16. If, however, the BIA member affirms without opinion,

---

1. The streamlining regulation has since been recodified (without change) as 8 C.F.R. § 1003.1(e)(4) (2004). I refer to the regulation in effect at the time of Zara's appeal to the BIA.

thereby making the IJ's decision the final agency determination, requiring all issues to also have been raised before the BIA, whose decision we do *not* review, serves none of the purposes underlying the jurisdictional exhaustion requirement. All of the policies underlying the jurisdictional exhaustion requirement—preventing premature interference with agency processes, allowing the agency an opportunity to correct its own errors, affording the parties and the courts the benefit of agency experience and expertise, and compiling a record for judicial review, *see Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)—are satisfied when the issues are fully presented to the final agency decisionmaker, which in a streamlined case is the IJ.

The majority cites to 8 C.F.R. § 3.1(a)(7)(ii) for the proposition that the BIA member's decision whether or not to streamline a case depends on the issues raised on appeal, and therefore by failing to raise issues in her BIA brief, the agency did not have a full opportunity to correct its own errors. Slip op. at 12946 Yet, this is the final stage in the streamlining decision. Before the BIA member gets to these considerations, he or she must first determine "that the *result* reached in the decision under review was correct; [and] that *any errors in the decision under review* were harmless or nonmaterial." 8 C.F.R. § 3.1(a)(7)(ii) (emphases added). In order to comply with these dictates, the BIA member must review the decision as a whole and not just the issues raised in a petitioner's brief on appeal,[2] and the agen-

cy therefore has the opportunity to correct its own errors before judicial intervention. *Cf. Sagermark v. INS,* 767 F.2d 645, 648 (9th Cir.1985) (holding that "[w]hether or not the decision on the merits was technically before the BIA, the BIA addressed it thoroughly enough to convince us that the relevant policy concerns underlying the exhaustion requirement—that an administrative agency should have a full opportunity to resolve a controversy or correct its own errors before judicial intervention—have been satisfied here").

The majority's analysis conflates jurisdictional exhaustion requirements with prudential exhaustion considerations. The reasons it advances in support of requiring exhaustion before the BIA in a streamlined case are, at best, prudential considerations, not jurisdictional requirements. In effect, the majority—and the government—would have its cake and eat it too. While recognizing that the IJ's decision is, under the streamlining regulation, the final agency decision, the majority requires exhaustion *beyond* "the final agency determination."

Although 8 U.S.C. § 1252(d)(1) provides that we cannot review a final order of removal unless "the alien has exhausted all administrative remedies available to the alien as of right," once the BIA streamlines a case, plenary (three-member) BIA review is no longer available to the alien "as of right."[3] The BIA member simply adopts the result reached in the IJ's decision but not necessarily its reasoning. In-

---

2. This conclusion is supported by the INS' own actions in this case. Even though Zara raised only one issue in her appeal brief to the BIA, the INS did not limit its response to that one issue. Rather, the INS adopted the IJ's decision and stated "the IJ's decision to deny asylum, withholding of removal, relief under the Convention Against Torture, and volun-

tary departure is amply supported by the record."

3. Of course, if the decision to streamline is *both* erroneous *and* consequential, we can remand to the BIA for its reconsideration by a three-member panel. *See Chen v. Ashcroft,* 378 F.3d 1081, 2004 WL 1774754, 1086 (9th Cir.2004).

deed, the BIA member is prohibited from stating any reasons, but instead must simply state that the IJ's decision is the final agency determination. *See* 8 C.F.R. § 3.1(e)(4)(ii).

For these reasons, once a BIA appeal is streamlined, I would hold that we have jurisdiction to review any issue raised before and considered by the IJ—whose decision is the agency's final decision. I respectfully dissent.