**SHENG BING HE and Hui Xin Chen, aka Jun Yun Wang, Petitioners,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 03–73213.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 17, 2006.

Decided June 5, 2006.

Jisheng Li, Esq., Law Office of Jisheng Li, Honolulu, HI, for Petitioners.

HI–District Counsel, Office of the District Counsel Department of Homeland Security, Honolulu, HI, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Linda S. Wendtland, Esq., Donald A. Couvillon, Esq., U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

---

Before: WALLACE, HAWKINS, and THOMAS, Circuit Judges.

## MEMORANDUM *

Sheng Bing He and Hui Xin Chen (collectively "Petitioners") appeal from the Board of Immigration Appeals' ("BIA") denial of their joint application for asylum.

The petitioners sought asylum based on their fear of future persecution arising out of China's coerced family planning regime. Part of their claim was based on their fear that a return to China would have risked the forced abortion of the couple's child, with which the wife was pregnant at the time of the applications and the IJ's decision. The BIA denied relief, reasoning in part that the child would have been born by the time the BIA considered her case, undermining her fear of future persecution.

When the BIA proposes to take judicial notice of individualized facts in reaching a decision on appeal, it must provide the petitioners notice of its intent and an opportunity to rebut the extra-record facts. *Getachew v. INS*, 25 F.3d 841, 846 (9th Cir.1994). Here, the BIA denied relief in large part based on taking notice of extra-judicial facts that did not form part of the immigration judge's decision without affording the petitioners an opportunity to address the newly considered facts.

That a child has been born does not necessarily alter a fear of future persecu-

tion based on resistance to a coercive population control regime, particularly if the couple is planning to have another child or credibly fears sterilization upon return to China. *See In Re Y–T–L*, 23 I & N Dec. 601, 607 (BIA 2003) (recognizing forced abortion is capable of repetition); *see also Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) ("Pregnancy often comes more than once to the same woman....").[1]

Because petitioners were not afforded an opportunity to address the BIA's new reasoning or its judicial notice of new facts, we must grant the petition for review and remand this case to the BIA for further proceedings.

**PETITION GRANTED; REMANDED.**

WALLACE, Senior Circuit Judge, dissenting.

The majority disposition raises grave concerns about the limits of our subject matter jurisdiction, separation of powers, an immutable principle of human biology, and whether *Roe v. Wade* controls asylum claims. Because petitioners did not exhaust any of these arguments before the Board of Immigration Appeals (Board), this should be a very simple case. I respectfully dissent. Because I believe that Chen has failed to establish her eligibility for asylum, I do not address the merits of He's argument that the Board erroneously determined that he was not eligible for derivative asylum because petitioners are

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. The dissent argues that this issue is unexhausted because Chen's petition was purportedly limited to her then-existing pregnancy.

This argument fails because such a narrow reading of her petition ignores the repetitive nature of pregnancy, and additionally because the BIA, by adopting this analysis without notice, did not give Chen the opportunity to clarify that she feared forced abortions of future pregnancies as well.

unmarried.[1]

## I.

When the petitioners filed their application for asylum, they based their claim solely on their fear that Chen's then-current pregnancy would be forcibly aborted. Neither their asylum petition nor their testimony gave the slightest indication that they feared a future pregnancy would be terminated. Even after the Immigration Judge (IJ) construed the petition as relating only to Chen's current pregnancy, petitioners never raised an objection to the Board. This argument is as unexhausted as any argument could ever possibly be.

It is clear that He's failure to exhaust deprives us of subject matter jurisdiction to consider an argument. *See Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir.2004) (8 U.S.C. § 1252(d)(1) "mandates exhaustion and therefore generally bars us, for lack of subject-matter jurisdiction, from reaching the merits of a legal claim not presented in administrative proceedings below"); *see also Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir.2004) ("failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter") (internal quotations and citation omitted). The majority inexplicably concludes otherwise. Because petitioners failed to exhaust any argument concerning future pregnancies, I would dismiss the petition for lack of subject matter jurisdiction.[2]

## II.

I fail to see reversible error for the Board to comment that a current pregnancy would expire in less than a year. I assume the majority is relying on some type of a due process violation which I do not comprehend. The Supreme Court has held that "the requirements of due process are flexible and call for such procedural protections as the particular situation demands." *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384, 2395, 162 L.Ed.2d 174 (2005) (internal quotations and alterations omitted); *see also Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir.2000) (We "reverse the BIA's decision on due process grounds if the proceeding was so fundamentally unfair that the alien was prevented from

1. Although I do not reach this issue, the majority is required to address it in order to grant He's petition for review. Because He only applied for derivative relief, this issue is dispositive of his petition.

2. The majority accuses me of ignoring the fact that pregnancy is capable of recurrence. Respectfully, the issue is not whether pregnancy is capable of recurring, but whether petitioners ever made such an argument to the Board. They unambiguously did not.

We are not free to expand our subject matter jurisdiction simply because we wish that petitioners would have made an argument to the Board that they plainly did not. Exhaustion has little meaning if it is sufficient that counsel was capable of raising an argument but did not.

The majority's expansive and counter-factual jurisdictional arguments are particularly troubling because "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted). Furthermore, "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Id.* (citation omitted). The majority effectively turns this presumption on its head by presuming the existence of jurisdiction where petitioner *could have made* an argument to the Board. We are not free to expand our jurisdiction by judicial decree, or to flout the limits Congress has placed on our review of Board decisions. Congress has chosen to limit our review to arguments that petitioner *actually made* to the Board, and we are required to respect that limitation.

reasonably presenting his case") (internal quotations and citation omitted).

I cannot agree that in this situation due process requires informing a woman that her pregnancy has a limited duration, or that the Board might take notice of this immutable biological fact. Nor does this render the proceedings "fundamentally unfair." The Due Process Clause is not so inflexible that it requires the government to inform women of the non-infinite duration of pregnancy before such a universally well-known fact can be considered. The majority's analysis is particularly implausible as "we review the procedures the Board uses to take administrative notice of facts not in the record for abuse of discretion." *Getachew v. INS,* 25 F.3d 841, 845 (9th Cir.1994) (citation omitted). There was no abuse. The majority fails even to acknowledge the standard of review, let alone demonstrate that the BIA abused its discretion.

Moreover, contrary to the suggestion of the majority, the limited duration of Chen's pregnancy is not an "extra record fact," but rather the only reasonable conclusion to be drawn *directly from evidence in the record.* The record in this case, which the Board directly cited, contains Chen's testimony before the IJ that she was expected to give birth on September 5, 2002. This due date is more than sufficient to establish that Chen would have given birth by August 22, 2003, thirteen months after her due date, by a preponderance of the evidence, the applicable burden of proof. *See* 8 C.F.R. § 208.13. The Board did not rely on an "extra record fact," but rather on a reasonable conclusion that is incontrovertibly established by Chen's testimony and human biology.

The majority gives no indication as to why it believes the Board, unlike all other fact-finders in our judicial system, cannot draw reasonable inferences from the available evidence. The Board made one of the most natural and reasonable inferences from the record that any fact-finder could possibly make. I am not aware of any case in which a court has held that due process forbids an agency from drawing conclusions from available evidence, and petitioners certainly have not cited any.

In any event, it is difficult to see how this "due process violation" could cause prejudice to petitioners, an issue the majority does not discuss. "In order to successfully merit relief from a due process violation, an asylum applicant must show not only the violation itself, but that the outcome of the proceeding may have been affected by the alleged violation." *Tawadrus v. Ashcroft,* 364 F.3d 1099, 1105 (9th Cir.2004) (internal quotations and citation omitted). Here Chen has not contended that she is still pregnant or even argued that the proceedings would have been affected if she had been warned that the Board would consider her finite gestational period. As such, there is no prejudice.

In summary, I do not believe that Chen's non-infinite gestational period was an "extra record fact," but rather a reasonable conclusion to be drawn from evidence in the record that included her due date. Even if it were otherwise, it would not be a due process violation for the Board to consider it. Even if a due process violation, petitioners cannot show prejudice.

### III.

By its citation, the majority also apparently believes that the judicially-created standard for Article III mootness set out in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), controls the congressionally-created statutory standard for asylum eligibility. Because petitioners never made this argument (and never cited *Roe*), I believe this argument is waived.

*See Indep. Towers v. Washington,* 350 F.3d 925, 929 (9th Cir.2003). Because the majority decides this issue on its own without any briefing by the parties, I will address the merits, dubious as they are.

*Roe* clearly does not control statutory eligibility for asylum. Mootness is a judicially-created justiciability doctrine, applicable in federal courts, that is derived from Article III's "case or controversy" requirement. Mootness reflects constitutional limitations on the subject matter jurisdiction of Article III courts. *Roe* recognized an exception to the mootness doctrine where an issue is "capable of repetition, yet evading review." *Id.* at 125, 93 S.Ct. 705 (internal quotations and citations omitted). Asylum, by contrast, has a statutory eligibility standard that is governed by Congress. It is petitioners' ability to satisfy their statutory burden, rather than constitutional justiciability that is at issue in this case.

*Roe* has nothing to do with asylum claims. As an administrative agency, the Board is not subject to Article III's "case or controversy" requirement. This is an elementary principle of administrative and constitutional law. As such, *Roe*'s holding is inapposite. Eligibility for asylum, as well as Board procedures, are determined by statute, not Article III. Furthermore, while mootness is a justiciability doctrine, the Board never held that the asylum petition was not justiciable, but rather that petitioners could not meet their statutory burden.

The mootness holding in *Roe* bears only the most superficial resemblance to this case, and that similarity cannot survive serious scrutiny. The majority fails to account for these critical differences and simply asserts that *Roe* applies without analysis.

The majority's holding also dramatically lowers the requirements for asylum eligi-bility and usurps the authority of Congress. Whereas Congress chose to require a *"well-founded fear* of persecution," 8 U.S.C. § 1101(a)(42)(A) (emphasis added), the majority decides to replace this standard with *Roe*'s "capable of repetition" standard. "Capable of repetition" is obviously a far less stringent requirement than "well-founded fear of future persecution." Only Congress has the power to set standards for asylum eligibility. *See Sale v. Haitian Ctrs. Council,* 509 U.S. 155, 201, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993) ("Congress ... has plenary power over immigration"). The majority violates separation of powers by substituting its chosen standard for the standard selected by Congress.

Furthermore, even assuming *Roe*'s mootness exception applied, *Roe* does not also recognize an exception to exhaustion, which only Congress could create. There is not the slightest suggestion in *Roe* that the case also created an exception to the statutory exhaustion requirements, as the opinion never discusses exhaustion. Therefore, petitioners still needed to raise the argument that they face future forced abortions before the Board in order for us to consider the issue. They failed to do so. Only the majority asserted the argument.

Thus, even assuming *Roe* controlled eligibility for asylum, petitioners have still failed to overcome their failure to exhaust their arguments. This failure deprives us of subject matter jurisdiction. Simply put, the majority is without power to announce its implausible holding. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause"), *quoting Ex parte McCardle,* 74

U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868).

## IV.

The majority's reasoning is squarely at odds with the applicable statutory regime, separation of powers, common sense, and human biology. Moreover, we lack subject matter jurisdiction even to consider these flawed arguments.

I therefore respectfully dissent.