

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2008

# Huang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4434

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Huang v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1573.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1573

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-4434

YI QING HUANG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of an Order of
The Board of Immigration Appeals
Immigration Judge: Honorable Henry S. Dogin
(No. A97-950-010)

Submitted Under Third Circuit LAR 34.1(a)
February 8, 2008

Before: MCKEE, AMBRO and ALDISERT, Circuit Judges

(Opinion filed: February 20, 2008)

OPINION

AMBRO, Circuit Judge

Yi Qing Huang, a native and citizen of China, petitions for review of an order of

the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") final order of removal. For the reasons set forth below, we will deny the petition in part and remand in part. As we write for the parties principally, our reference to facts is truncated.

I

Huang arrived in the United States in March 2004 without a valid entry document. He conceded removability in subsequent proceedings before the IJ, but applied for political asylum, withholding of removal, and relief under the Convention Against Torture. Huang asserted that he would be persecuted if he returned to China because he had violated strict Chinese family planning laws.

The IJ held a hearing in January 2005. He concluded that Huang was not credible, denied his application in all respects, and designated his application for asylum as frivolous under 8 U.S.C. § 1158(d)(6). Such a designation makes Huang permanently ineligible for asylum.

Huang appealed to the BIA. It affirmed the opinion of the IJ, explicitly adopting its reasoning.

Huang timely petitioned for review to the United States Court of Appeals for the Second Circuit, which transferred the case to our Court because the IJ proceedings were completed in New Jersey. Huang argues that the IJ erred in finding him not credible and in concluding that his application for asylum was frivolous.

II

2

The BIA had jurisdiction over Huang's appeal under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). We generally review the decision of the BIA, but where, as here, the BIA adopts the opinion of the IJ, we review the IJ's decision directly. *Voci v. Gonzales*, 409 F.3d 607, 612-13 (3d Cir. 2005). We review credibility determinations for substantial evidence. *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). "Under this deferential standard of review, we must uphold the credibility determination of the BIA or IJ unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). However, we may reverse a credibility determination if it is not grounded in the record. *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003).

III

The IJ made a number of observations about the quality of the evidence and testimony provided by Huang. First, he found implausible Huang's testimony regarding the alleged 1993 abortion. Huang testified that his wife, after giving birth to a child in 1990, was fitted with a contraceptive device by family planning authorities but had it removed at a private clinic, resulting in a pregnancy. He also testified that, though his wife knew that the device had been removed and had missed her period, she nonetheless appeared for an examination by family planning authorities, resulting in an abortion. The IJ found this version of events implausible, asking why Huang's wife did not hide rather than "put[] her head into the mouth of the lion."

3

Second, the IJ pointed to the investigation performed by an investigator for the Department of Homeland Security ("DHS") based at the consulate in Guangzhou, China. That investigation indicated that the abortion certificate presented by Huang regarding the alleged 1993 abortion was not issued by the hospital at which he claimed the abortion was performed, but instead was fabricated.

Third, the IJ noted that the DHS investigation also contradicted Huang's testimony regarding an alleged abortion in 2004 (terminating the alleged 2003 pregnancy). The report of that investigation concluded that the abortion certificate and the assessment of a fine paid to Chinese authorities submitted as evidence of an 2004 abortion were fabricated.

Finally, the IJ highlighted a discrepancy between Huang's testimony at the removal hearing and his statements at a credible-fear interview shortly after arriving in the United States. This discrepancy pertained to the alleged pregnancy in 2003. The IJ noted that Huang stated at the credible-fear interview that his wife fled only after hearing a rumor that police were coming to arrest her, whereas he claimed at the IJ hearing that she fled as soon as she knew she was pregnant.

The IJ made an adverse credibility finding on the basis of these considerations. Huang argues that this was error because (1) the DHS investigation was unreliable inasmuch as it might reflect a desire of the Chinese government to harm those who apply for asylum in the United States; (2) the discrepancies between Huang's testimony at the

4

credible-fear interview and at the IJ hearing likely are the result of a poor summary by the asylum officer (who was not present for cross-examination) because Huang could not have said that his wife waited until the police were coming before fleeing; and (3) that it was not implausible for Huang's wife to have gone to the 1993 appointment with Chinese officials even though she had good reason to believe she was pregnant.

Huang's arguments are weakened by his failure to explain the discrepancies in his testimony. He was given the opportunity by the IJ to reject the official summary of his testimony at the credible-fear interview. However, when asked whether he had given the summarized testimony at that interview, Huang merely stated "I do not recall." At no time did Huang explain the discrepancy between his testimony at the IJ hearing and the credible-fear interview.

Nor does Huang explain why no reasonable adjudicator could find implausible his claim that his wife went to an appointment with the state authorities even after having reason to believe she was pregnant. The implausibility of this alleged decision by Huang's wife may not have been enough alone to support an incredibility finding, but, in the context of other inconsistencies and flaws in the evidence offered, the IJ was not unreasonable to find the account far-fetched.

The DHS investigation greatly undermines Huang's credibility. Unlike the report challenged in *Ezeagwuna v. Ashcroft*, 325 F.3d 396 (3d Cir. 2003), the report in this case was created by a DHS investigator who had the ability to evaluate the credibility of the

information she reported. Accordingly, the DHS report does not suffer from hearsay problems sufficient to render it unreliable for evaluating credibility, and the IJ was correct to consider it. That said, we are troubled by Huang's suggestion that investigations into Chinese hospital records are inherently untrustworthy because of animus on the part of Chinese officials toward asylum seekers. However, he presents no evidence suggesting that such animus was a factor in the investigation into his purported documentation. Nor does he identify record evidence indicating that this is a prevalent problem, such as a report from the State Department describing a tendency of Chinese hospital officials to deny the validity of purported records of abortions.

Accordingly, we conclude that a reasonable adjudicator could have made an adverse credibility finding against Huang.[1] Because we do not disturb the IJ's adverse credibility finding, we affirm the denial of asylum. We also affirm the denial of withholding of removal because Huang necessarily fails to meet its more stringent standard. *See Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003).[2]

---

[1] The Government argues that many of the specific arguments made by Huang were not presented to the BIA. This raises a close question, since the brief submitted by Huang to the BIA appears to have been vague boilerplate intended to preserve as many arguments as possible for a review petition to our Court. This brief may not have put the BIA sufficiently on notice about Huang's specific arguments to exhaust each of those contentions. However, we need not decide that question because at least some of Huang's arguments are properly before us and we would deny his petition for review even assuming that we may consider all of these arguments.

[2] Huang does not argue that the BIA erred in upholding the IJ's decision to deny relief under the Convention Against Torture.

IV

Huang asserts that the IJ erred in concluding that his asylum application was frivolous. The Government claims that we lack jurisdiction over this question because Huang did not raise it before the BIA. However, he did argue that the IJ's adverse credibility finding and resulting denial of asylum were incorrect. These claims implicitly challenge the IJ's finding that Huang's asylum application was frivolous. They were an "effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal." *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir.2005) (citing *Bhiski v. Ashcroft*, 373 F.3d 363, 367-68 (3d Cir. 2004)); *see also Zara v. Ashcroft*, 383 F.3d 927, 931 (9th Cir. 2004) (finding exhaustion where petitioner gave the BIA "the opportunity to resolve [the] controversy or correct its own errors before judicial intervention"). Therefore, Huang sufficiently exhausted this claim.

We recently discussed the high standard for a frivolousness conclusion in *Luciana v. Attorney General*, 502 F.3d 273, 281 (3d Cir. 2007). In light of that precedent, we solicited additional briefing from the parties. The Government requested that the BIA have the first opportunity to evaluate this case under *Luciana* if we concluded that we have jurisdiction over the frivolousness challenge. We will defer to that request.

* * * * *

We deny in part the petition for review, and remand in part for consideration of the frivolousness finding under *Luciana*. This panel retains jurisdiction pending BIA review

7

of that finding.