

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-19-2008

# Kalou Drame v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1176

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Kalou Drame v. Atty Gen USA" (2008). *2008 Decisions*. Paper 208.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/208

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1176
_____

KALOU DRAME,

Appellant

v.

ATTORNEY GENERAL OF THE UNITED STATES

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A79 728 769)
Immigration Judge:  Honorable Donald Vincent Ferlise

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 17, 2008

Before:  SLOVITER, STAPLETON AND COWEN, Circuit Judges

(Opinion filed: November 19, 2008)
_____

OPINION
_____

PER CURIAM

    Kalou Drame, a native and citizen of Mali, was charged with removability

pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) [8 U.S.C.

§ 1182(a)(6)(A)(i)], as an alien present in the United States without admission or parole.

Drame conceded the charge of removability but sought withholding of removal and protection under the United Nations Convention Against Torture ("CAT"). In support of his claim for relief, Drame testified that he and his family were farmers and members of the Soninke tribe. A dispute arose when Fulani tribesmen allowed their animals to go onto Drame's land and damage his crops. Ultimately, Fulani shepherds killed Drame's father; during the same altercation the shepherds beat Drame with sticks and machetes. Drame fled to his uncle's home, where he stayed for three weeks before traveling to Canada. Following an initial unsuccessful attempt to seek admission to the United States in 1995,[1] Drame entered this country from Canada without inspection in July 1998.

The Immigration Judge ("IJ") found that Drame was not credible because of discrepancies between his testimony and his affidavit concerning the circumstances surrounding his father's death and his trip to his uncle's house. The IJ indicated that, even assuming that Drame was credible, he would not be entitled to relief because the incidents he described did not amount to persecution. Accordingly, the IJ denied all relief. The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's adverse credibility determinations.[2] Drame petitioned for review of the BIA's decision.

_____

[1] Drame pled guilty to attempted entry by willfully making a false misrepresentation of material fact, see Immigration and Nationality Act ("INA") § 275(a)(3) [8 U.S.C. § 1325(a)(3)], after he presented a false Canadian passport to United States border officials.

[2] Because Drame had not pursued asylum, the BIA vacated that portion of the IJ's decision which found that Drame's asylum application was frivolous. Furthermore, the BIA did not specifically adopt the IJ's conclusion that Drame's experiences did not rise to

2

Drame raises two claims on appeal, neither of which directly challenge the adverse credibility determinations.[3]  First, Drame alleges that the IJ violated his due process rights.  He concedes that "gross inconsistencies were found between [his] testimony and the affidavit that was prepared prior to the hearing," but asserts that the IJ "should have inquired as to what led to th[ese] discrepancies."  Instead, according to Drame, the IJ "prevented the record from being properly developed," failed "to give any weight to Mr. Drame's statements concerning his limited educational background," and "hastily entered a decision against him."

Judicial review of final orders of removal is available only if the alien has exhausted administrative remedies available "as of right."[4]  INA § 242(d)(1) [8 U.S.C.

---

the level of persecution.

[3] At one point, however, Drame asserts that "[o]ther than the inconsistencies between [his] testimony and the affidavit, all other discrepancies were minor."  Drame is referring to an inconsistency concerning the timing of his trip to his uncle's house following his father's murder.  Drame testified that after his father's burial he "left the village the next day."  He later stated that he had already left his home when the Fulani came to destroy it the same day they killed his father.  Drame's affidavit indicated that he went to his uncle's home after being threatened with eviction from his home "a few days after [his father's] burial."  To account for these discrepancies, Drame explained that "[t]o travel between our village to [the town where his uncle lived] is not a one day trip."  It is possible that Drame left his house the day his father was killed, but did not leave the village until the next day.  Nevertheless, Drame's explanation does not account for the statement in his affidavit about leaving a "few days" after the burial.  Contrary to Drame's belief, the amount of time he waited before leaving is relevant because it reflects the degree to which he feared for his safety.

[4] A claim is "available as of right" if "(1) the alien's claim was within the jurisdiction of the BIA to consider and implicated agency expertise, and (2) the agency was capable

(continued...)

3

§ 1252(d)(1)]. "To exhaust a claim before the agency, an applicant must first raise the issue before the BIA or IJ . . . so as to give it 'the opportunity to resolve a controversy or correct its own errors before judicial intervention.'" Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005) (citing Zara v. Ashcroft, 383 F.3d 927, 931 (9th Cir. 2004)). "[S]o long as an immigrant petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies." Yan Lan Wu v. Ashcroft, 393 F.3d 418, 422 (3d Cir. 2005) (citing Bhiski v. Ashcroft, 373 F.3d 363, 367-68 (3d Cir. 2004)).

The government contends that Drame failed to exhaust his due process claim. It is clear that Drame did not raise this claim in his Notice of Appeal to the BIA or in his brief filed in support of the Notice of Appeal. See Yan Lan Wu, 393 F.3d at 422. When a petitioner advances a due process claim, however, exhaustion of administrative remedies may not be required because the BIA generally lacks jurisdiction to hear constitutional challenges. See Sewak v. INS, 900 F.2d 667, 670 (3d Cir. 1990). But a due process claim alleging an error that is correctable through the administrative process is subject to the exhaustion requirement. See Khan v. Attorney General, 448 F.3d 226, 236 n.8 (3d Cir. 2006) ("[B]ecause this claim, stripped of its 'due process' label, is a claim of

_____

[4](...continued)
of granting the remedy sought by the alien." Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005).

4

procedural error that could have been addressed by the BIA on appeal, the requirement that [the petitioner] exhaust remedies applies."). Drame's complaint about the manner in which the IJ conducted the hearing is essentially a procedural due process claim. It is clear the BIA had the ability to hear, adjudicate, and remand this claim. See Bonhometre, 414 F.3d at 448 (holding that "it is beyond debate that, had the BIA concluded that the IJ's conduct during the immigration hearing did not fulfill his obligation to completely develop the record under the immigration regulations, it could have remanded for a new trial."). Thus, Drame's failure to present his procedural due process claims to the Board renders them unexhausted.

In his second claim, Drame asserts that the IJ and the BIA erred in denying his application for relief under the CAT. The CAT prevents the United States government from removing an alien to a country where torture will occur. See 8 C.F.R. § 208.16(d)(1). The torture must be "inflicted by or at the instigation of or with the consent or acquiescence of" an official person. 8 C.F.R. § 208.18(a)(1). It is the applicant's burden to establish "that it is more likely than not" that he will be tortured if removed. 8 C.F.R. § 208.16(c)(2). The applicant must meet this burden with objective evidence. See Sevoian v. Ashcroft, 290 F. 3d 166, 175 (3d Cir. 2002). The denial of relief under the CAT is reviewed under the substantial evidence test. See Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003).

While Drame is correct that an adverse credibility finding does not necessarily

5

preclude relief under the CAT, <u>id.</u> at 476-77, he has failed to demonstrate that he is more likely than not to be tortured if returned to Mali. His contention that Fulani shepherds will "continue to pursue him and kill him without any intervention from the government" is purely speculative. The record contains no evidence that anyone in the Malian government, or acting with its acquiescence, seeks to torture Drame. Therefore, the BIA properly denied Drame's CAT claim. <u>See</u> <u>Tarrawally v. Ashcroft</u>, 338 F.3d 180, 187-88 (3d Cir. 2003); 8 C.F.R. § 208.16(c)(2).

For the foregoing reasons, we will deny the petition for review.