MEMORANDUM *
Slavik Karapetyan, a native and citizen of Armenia, petitions for review of the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252(a). We grant the petition for review, reverse the adverse credibility determination, and remand on an open record for further proceedings.
I.
Under 8 U.S.C. § 1252(d)(1), we have jurisdiction only if Karapetyan has exhausted his administrative remedies by challenging the adverse credibility finding-before the Board of Immigration Appeals (BIA). See also Vargas v. INS, 831 F.2d 906, 907-08 (9th Cir.1987) (“Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter.”). The immigration judge (IJ) denied *716 Karapetyan asylum because she found several aspects of his testimony incredible. However, she did not otherwise address the substance of Karapetyan’s claims and offered no alternative reason for denying relief. The BIA affirmed the IJ’s decision without opinion in a one-member order, making the IJ’s decision the final agency determination. See 8 C.F.R. § 1003.1(e)(4).
In his appeal brief to the BIA, Karapetyan did not explicitly state that he was challenging the IJ’s adverse credibility determination. Nevertheless, in affirming the IJ, the BIA reviewed the IJ’s decision and would have known that the decision was based solely on an adverse credibility finding, leaving no other relevant issue to present on appeal. See 8 C.F.R. § 1003.1(e)(4)(i) (stating that the BIA member shall affirm the IJ’s decision “if the Board member determines that the result reached in the decision under review was correct”). Indeed, by issuing a summary affirmance, the BIA member signified that he had read the IJ’s opinion and had evaluated the IJ’s reasoning to determine that “any errors in the decision of the immigration judge or the Service were harmless or nonmaterial.” 8 C.F.R. § 1003.1(e)(4)(ii). Given that Karapetyan’s brief raised several issues bearing directly on the adverse credibility determination, including the authenticity of the death certificate for Karapetyan’s mother, his mother’s inability to get an Armenian passport, and documentary evidence Karapetyan presented to corroborate his story, the BIA was on notice that Karapetyan was challenging the adverse credibility determination. While Karapetyan’s BIA appeal brief created confusion by stating that the IJ did not make an adverse credibility determination, this was obviously a misstatement, given the nature of the IJ’s decision. Because the IJ’s decision rested solely on the adverse credibility finding and because Karapetyan articulated a challenge to this finding in his brief, it would have been apparent to the reviewing BIA member that the adverse credibility finding was the basis for the appeal.
Zara v. Ashcroft, 383 F.3d 927 (9th Cir.2004), does not counsel otherwise. Unlike in Zara, Karapetyan’s BIA brief offers several specific challenges to the IJ’s decision that are relevant to the adverse credibility finding. The applicant in Zara made only one argument, unrelated to any credibility finding, in her appeal to the BIA but then sought to overturn the credibility finding before this court. Id. at 928. Additionally, the IJ in Zara addressed other issues beyond the applicant’s credibility and held that even if the applicant were found credible, she would not be entitled to asylum. Id. at 929. Here the only issue Karapetyan could have possibly appealed is the adverse credibility finding, so the BIA did not need to sort out which one of several issues it had to review. Karapetyan has not made the kind of “general challenge” to the IJ’s decision that Zara is concerned with; rather, he has specified particular factual and evidentiary considerations that form the basis of his appeal. Id. at 930.
Unlike many habeas cases where the appellate state court denies discretionary review, the BIA actually reviewed the IJ’s decision and made it the final agency determination. Cf. Baldwin v. Reese, 541 U.S. 27, 31, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (“Sometimes an appellate court can decide a legal question on the basis of the briefs alone. That is particularly so where the question at issue is whether to exercise a discretionary power of review, i.e., whether to review the merits of a lower court decision.”). In doing so, the reviewing BIA member necessarily read the IJ’s decision and decided that any errors were harmless, despite Karapetyan’s arguments *717 bearing on the credibility issue. We therefore hold that we have jurisdiction to consider Karapetyan’s petition for review.
II.
The IJ must articulate a legitimate basis to question the applicant’s credibility and must offer specific, cogent reasons for any stated disbelief. Gui v. INS, 280 F.3d 1217, 1225 (9th Cir.2002). Minor inconsistencies that do not go to the heart of the asylum claim are not an adequate basis for an adverse credibility finding. Singh v. Gonzales, 439 F.3d 1100, 1105 (9th Cir.2006). In addition, the IJ must givé the petitioner an opportunity to explain any perceived inconsistencies. Id.
The IJ stated that she did not believe several aspects of Karapetyan’s testimony, primarily because of perceived inconsistencies in documentary evidence and the lack of corroborating evidence or explanatory testimony. However, many of these discrepancies were minor, nonexistent, or based on speculation, and in several instances the IJ did not give Karapetyan a reasonable opportunity to explain.
First, because of discrepancies in the dates of death listed on the two death certificates Karapetyan submitted, the IJ did not believe Karapetyan’s testimony that his mother was taken away and beaten due to her Azeri ethnicity. However, the supposed discrepancy exists only in the translated documents: the original certificates consistently indicate a date of January 6, 1998. Since there appears to be no inconsistency between the original documents, this is not a legitimate basis for finding Karapetyan’s testimony regarding his mother incredible. See Shah v. INS, 220 F.3d 1062, 1068 (9th Cir.2000) (“It is well-established that[ ] minor discrepancies in dates that are attributable to typographical errors cannot properly serve as the basis for an adverse credibility finding.”) (quotation marks and citation omitted); cf. He v. Ashcroft, 328 F.3d 593, 598 (9th Cir.2003) (noting that in a hearing, “faulty or unreliable translations can undermine the evidence on which an adverse credibility determination is based”).
The IJ noted that the death certificates state that Karapetyan’s mother died of a hemorrhage resulting from a blow, although Karapetyan claimed that the doctor was afraid to acknowledge that she died from being beaten. The IJ did not ask Karapetyan about this discrepancy, so it cannot be a basis for the adverse credibility finding. The IJ also found it “highly questionable” that Karapetyan could obtain his own medical records but not his mother’s, even though they were admitted to the same hospital. However, because Karapetyan already produced the death certificates corroborating his testimony regarding his mother, the IJ cannot base her adverse credibility determination on the failure to produce further evidence supporting the claim. Sidhu v. INS, 220 F.3d 1085, 1091 (9th Cir.2000); see also Gui, 280 F.3d at 1227. The IJ’s other stated reasons for believing that Karapetyan fraudulently obtained the death certificates or that he testified falsely about his mother are not specific, cogent reasons for making an adverse credibility finding, because they are either speculative or concern minor inconsistencies.
Second, the IJ did not believe Karapetyan’s testimony that he had been detained and beaten because of his mixed Azeri/Armenian ethnicity and political activities. In part this was due to the inconsistency between Karapetyan’s testimony that he was hospitalized for 24 days following his first arrest and the translated hospitalization record, which stated that he was hospitalized for 42 days. But the original hospitalization record indicates *718 that Karapetyan was hospitalized between “07.03.1998,” March 7, 1998, and “01.04.1998,” April 1, 1998, for 24 days, consistent with Karapetyan’s testimony. In any event, the IJ never asked Karapetyan about the time discrepancy, so the alleged inconsistency cannot support the adverse credibility finding.
The IJ found that Karapetyan did not testify credibly about his involvement in Paikar, but contrary to the IJ’s assertions, Karapetyan identified in his asylum application the Paikar leader who was arrested and killed, and the IJ did not ask about this at the hearing. Similarly, the IJ did not ask Karapetyan for evidence that Paikar members were persecuted or allow him to explain why he could not obtain such evidence. Karapetyan presented his membership card as evidence of his involvement in Paikar, but the IJ assumed without providing an opportunity to explain that Karapetyan could have provided more significant evidence of his involvement. This is improper conjecture and cannot support the adverse credibility determination.
Finally, the IJ did not believe that Karapetyan could have obtained a valid passport to leave Armenia if he had been accused of spying. But as Karapetyan explained in the hearing, he was never formally charged but had been called a spy as an epithet. In addition, he obtained his passport before he was arrested by Armenian officials and labeled a spy.
For the foregoing reasons we reverse the adverse credibility finding. We remand on an open record because there may be other reasons upon which the IJ may rely to find Karapetyan not credible and to give Karapetyan an opportunity to explain any significant discrepancies and to present corrected translations of the appropriate documents. See Soto-Olarte v. Holder, 555 F.3d 1089, 1095-96 (9th Cir.2009). The petition for review is
GRANTED and REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.