**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| EDGAR ARMANDO CHAVEZ, | No.   15-70822 |
| Petitioner, | Agency No. A094-144-347 |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 4, 2017
Pasadena, California

Before:  CALLAHAN and BEA, Circuit Judges, and WHALEY,** District Judge.

Edgar Armando Chavez, a native and citizen of El Salvador, petitions for

review of the Board of Immigration Appeal ("BIA")'s decision dismissing his

appeal of an Immigration Judge ("IJ")'s decision finding him removable and

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

denying his applications for asylum, withholding of removal, and deferral of removal under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252, and we dismiss in part and deny in part the petition for review.

First, Chavez argues, for the first time, that the Agency erred in denying withholding of removal because "it did not address the relevant framework" in *Matter of Y-L-*, 23 I. & N. Dec. 270 (AG 2002), when it found that his aggravated felony conviction was a particularly serious crime. We "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Moreover, "we may review any issue *addressed on the merits* by the BIA, regardless whether it was raised to the BIA by the petitioner." *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 852 (9th Cir. 2013) (emphasis added). Here, the BIA did *not* address on the merits whether Chavez overcame the presumption under *Matter of Y-L-* that he was convicted of a particularly serious crime, but rather determined that Chavez did not meet his burden of presenting evidence to rebut that presumption. Accordingly, Chavez failed to exhaust his argument regarding the IJ's particularly serious crime determination to the Agency.

2

Second, the Agency did not err by holding that Chavez failed to demonstrate CAT deferral eligibility. Substantial evidence supports the Agency's finding that Chavez failed to demonstrate that he would "more likely than not" be tortured by the Salvadoran police. *See* 8 C.F.R. § 1208.16(c)(2). Although Chavez may be interrogated as part of the reception process when he returns to El Salvador, a wide variety of interrogation techniques are employed, many of which are not torture. The record does not compel the requisite "more likely than not" probability of torture.

Moreover, substantial evidence supports the BIA's determination that the Salvadoran government would not consent or acquiesce to torture by gangs. 8 C.F.R. § 1208.18(a)(1) (applicant must show that the alleged torture will be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity"). El Salvador has enacted anti-gang laws, which "embrace a comprehensive approach to gang violence prevention" and include several components aimed at youth prevention and rehabilitation from gangs. Although some of these laws may be ineffective and the social components under-funded, the government is nonetheless taking action by enacting anti-gang laws. *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014) ("[a] government does not acquiesce in the torture of its citizens merely

3

because it is aware of torture but powerless to stop it" (internal quotation marks omitted)).

In addition, substantial evidence supports the Agency's determination that Chavez failed to demonstrate that he would more likely than not be targeted and tortured by gangs. Chavez's claim that he will be targeted by gangs is premised on being recognized as a former gang member. Chavez testified that he has two gang tattoos. One tattoo has been covered up with other tattoos, and the other is in a discrete location and can be hidden. Chavez testified that people cannot identify him as a former gang member based on his appearance and how he presents himself.

Even assuming gang members will be able to recognize Chavez as a former member, the Agency properly found insufficient evidence to demonstrate that they would torture him. Chavez left the gang while he was living in the United States without incident, and he was not threatened or harmed in the eight years since leaving. Moreover, no evidence was presented that the gang would view Chavez's departure as unsanctioned.

In addition, the Agency properly found that Chavez, who is now in his forties, was unlikely to be targeted by gangs based upon his age. Dr. Harry Vanden testified that the gangs target El Salvador's youth and that gang members

4

are usually between the ages of nine or ten and into their twenties. The documentary evidence further supports that gangs target the youth of El Salvador, not men who are over 40 years old. Additionally, Chavez testified that gang members can earn "veterano" status for previous actions and avoid being harassed.

Finally, several of Chavez's arguments—(1) that the Salvadoran government would turn a blind eye to "death squads" of rogue police officers targeting gang members, (2) that the BIA erred by not crediting Dr. Vanden's testimony that Chavez "appears rather young," and (3) that the Agency erred by separately considering various possible outcomes facing Chavez upon his arrival in El Salvador, rather than addressing the aggregate risk of torture based on all possible outcomes—were not exhausted to the BIA. Accordingly, this Court lacks jurisdiction to consider them. 8 U.S.C. § 1252(d)(1); *see Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004).

**DISMISSED IN PART AND DENIED IN PART.**